98 F.3d 1347
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
Nan CRANDALL, Defendant-Appellant-Cross-Appellee.
 No. 94-50124, 94-50159.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1995.
Submission Vacated Aug. 11, 1995.
Resubmitted Sept. 5, 1996.
Decided Sept. 11, 1996.
 
 ORDER
 This case is hereby RESUBMITTED as of September 5, 1996.
 Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The appellant challenges her conviction and also raises a number of sentencing issues. We affirm her conviction but vacate her sentence and remand for sentencing.
 
 The Conviction
 
 3
 First, we reject Crandall's contention that conviction for accepting illegal gratuities in violation of 18 U.S.C. § 201(b)(2)(A) requires the government to prove that she received a quid pro quo for her favors. See United States v. Strand, 574 F.2d 993, 995 & n. 2 (9th Cir.1978) (gifts need not be the motivating force behind the official act; illegal gratuities sections of 18 U.S.C. § 201 "cover instances where the public official would carry out the act or omission whether or not he received the thing of value"). See also United States v. Muldoon, 931 F.2d 282, 287 (4th Cir.1991); United States v. Niederberger, 580 F.2d 63, 68-69 (3rd Cir.1978), cert. denied, 439 U.S. 980 (1978); United States v. Evans, 572 F.2d 455, 481 (5th Cir.1978); United States v. Brewster, 506 F.2d 62, 72 (D.C.Cir.1974).
 
 
 4
 Second, we hold that the court did not err in refusing to provide Crandall's proposed jury instruction--a long passage from the Code of Federal Regulations detailing the regulatory requirements governing bird quarantines. By showing that the government did not fully comply with those regulations, Crandall hoped to show that it made an implied representation to her that she did not have to quarantine an imported Yellow-Tailed Black Cockatoo. The court did instruct the jury regarding her theory of governmental estoppel. The instruction that the judge rejected neither states a legal theory nor relates to any legally cognizable argument, and thus the court did not err in refusing it.
 
 The Sentence
 Alternative Theories
 
 5
 As part of a single count of the indictment, a smuggling count, the government asserted three alternative theories on which the jury could have convicted the defendant of "knowingly caus[ing] the importation and bringing into the United States of [birds] ... contrary to law" in violation of 18 U.S.C. § 545. The same count charged her with illegally importing up to 20 birds because she either (1) failed to properly report the importation of 20 birds to the Fish and Wildlife Service, or (2) falsely stated the name of the importer on the shipping documents for 10 birds, or (3) failed to quarantine one bird, the Yellow-Tailed Black Cockatoo. Any of the government's theories was sufficient to support a conviction.
 
 
 6
 Crandall claims that the district court erred in using the theory involving the greatest number of birds and thus the highest possible value for sentencing purposes, and accordingly enhancing her sentence by five points pursuant to U.S.S.G. § 2Q2.1(b)(3)(A) (incorporating the valuation chart of U.S.S.G. § 2F1.1). She argues, drawing inferences from the jury's decision to acquit her of some counts in the indictment, that the jury must have convicted her for failing to quarantine the Yellow-Tailed Black Cockatoo, and thus claims that the district court should have enhanced her sentence by only two points for the value of the bird she was convicted of smuggling.
 
 
 7
 As the prosecution, the judge, and even Crandall acknowledge, it is impossible to determine the basis of the jury conviction on the smuggling count. In an analogous situation, when a jury convicted a defendant of a conspiracy that the government argued entailed five separate objects, involving different statutory violations, and the jury did not specify which object served as the basis of its conviction, we held that the defendant must be sentenced as if he were convicted of that object that carries the lowest period of incarceration. United States v. Garcia, 37 F.3d 1359, 1369-71 (9th Cir.1994), cert. denied, 115 S.Ct. 1699 (1995).
 
 
 8
 Although the three government theories underlying the smuggling count in this case do not involve different statutory violations, they do lead to different guideline sentencing results because the scope of Crandall's relevant conduct under the Sentencing Guidelines and thus her sentence depends on whether she was convicted of smuggling one, 10, or 20 birds. Following Garcia, we conclude that in such circumstances the defendant must be sentenced as if convicted under the theory that results in the lowest guideline range.[1] If Crandall's relevant conduct were the same no matter which act or theory served as the basis of her conviction, the ambiguity in the verdict would be unimportant. Given the facts of this case, however, which conduct of Crandall's is relevant to the smuggling count depends on which of the three theories underlies her conviction.[2]
 
 
 9
 Ordinarily, we would simply vacate Crandall's sentence and remand to the district court for a determination of which of the three government theories leads to the lowest guideline range and thus the lowest sentence.[3] There is, however, a further complication--the kind that understandably causes judges to wonder why the Guidelines were visited upon them.
 
 
 10
 "Grouping" may have some effect on the level of increase attributable to the value of the birds. See U.S.S.G. § 1B1.3(a)(2). While neither party argued this issue and we therefore do not consider it on the merits, we cannot tell from the record whether the district court relied on it in determining the five-level increase. Moreover, while it appears that the district court decided to group because it did not impose a multiple count enhancement, we are not certain it did and do not preclude it from deciding not to group on remand.[4] Because the uncertainties surrounding this sentence require a remand, we request the district court to reexamine the five-level increase, bearing in mind the rules we have explained above regarding alternative theory convictions. In addition, should the court decide to group the counts, it may also consider what effect, if any, that action may have on the "value of the birds" increase.
 
 Commercial Purpose or Pecuniary Gain
 
 11
 Section 2Q2.1(b)(1)(A) of the Sentencing Guidelines reads, "if the offense was committed for pecuniary gain or otherwise involved a commercial purpose ... increase by 2 levels." The district court concluded that the birds were "imported for a commercial purpose," and enhanced Crandall's sentence accordingly. Crandall argues that the sentencing court should have examined her intent with respect to why a bird was smuggled, not the intent of the commercial bird importers. She maintains that she did not act for pecuniary gain and that she had no commercial interest in the smuggled birds. Accordingly, she contends that the district court erred by enhancing her sentence by two points under U.S.S.G. § 2Q2.1(b)(1)(A).
 
 
 12
 That section lends itself to either of two interpretations. Under one interpretation, that urged on this Court by Crandall, an enhancement is appropriate only if the defendant engaged in the smuggling for pecuniary gain or if the defendant was motivated by some other commercial purpose. Under another interpretation, that adopted by the district court, the enhancement is appropriate if the defendant engaged in the smuggling for pecuniary gain or if the smuggling was undertaken for a commercial purpose, whether or not the defendant shared that commercial purpose. The wording of U.S.S.G. 2Q2.1(b)(1)(A) is consistent with both interpretations. Both interpretations also comport with common sense. The first holds that a defendant should only receive extra punishment when the court finds that the defendant meets the requisite scienter requirement. The second holds that it is a more serious offense to participate in a commercial smuggling ring than in a non-commercial smuggling ring.[5]
 
 
 13
 On balance, we believe that Crandall's interpretation is more plausible because it has the virtue of consistency. Under her interpretation, enhancement requires some showing of intent whichever prong of the provision is involved. Under the other interpretation, however, intent is required under the pecuniary gain but not under the commercial purpose prong. We see little reason for an intent requirement under one prong but not the other.[6]
 
 
 14
 Any doubts we have about the proper interpretation of § 2Q2.1(b)(1) are dispelled by the rule of lenity, which applies to the Federal Sentencing Guidelines as well as to statutes. United States v. Bassinger, 60 F.3d 1400, 1410 (9th Cir.1995); United States v. France, 57 F.3d 865, 866 (9th Cir.1995). If it is apparent that a statute or guideline is ambiguous, we must give criminal defendants the benefit of the doubt. Accordingly, we hold that U.S.S.G. § 2Q2.1(b)(1) requires a showing either that the defendant engaged in the prohibited activity for pecuniary gain or that the defendant engaged in the activity for a commercial purpose. Because this part of the district court's sentencing decision rested on the conclusion that the bird importers had a commercial purpose, we remand for a determination of whether Crandall herself had such a purpose.
 
 Other Issues
 
 15
 We briefly discuss two other issues. We affirm the district court's decision not to grant Crandall a downward departure as a minor or minimal participant. As the judge noted, "It's pretty hard to say, pretty hard to say that she is a minor participant when the whole thing would have been impossible without her."
 
 
 16
 We also affirm the court's refusal to impose an enhancement for obstruction of justice. The court found that Crandall did not intend to obstruct justice when she hid some documents because the court credited Crandall's testimony that she hid the documents because she was behind on her paperwork and was afraid of getting fired. We cannot say the judge clearly erred.
 
 
 17
 Thus, we affirm Crandall's conviction but vacate her sentence and remand for sentencing in light of this disposition.
 
 
 18
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided for by 9th Cir.R. 36-3
 
 
 [1]
 The sentencing guidelines permit the judge to clarify an ambiguous jury verdict on a conspiracy charge, but require the judge to apply a beyond-a-reasonable-doubt standard in doing so. U.S.S.G. § 1B1.2 n. 5; Sentencing Guidelines Manual, App. C. Amendment 75. We have questioned the constitutionality of that approach in the conspiracy context, see United States v. Garcia, 37 F.3d 1359, 1371 n. 4 (9th Cir.1994), cert. denied, 115 S.Ct. 1699 (1995), and decline to apply it to Crandall's conviction for smuggling
 
 
 [2]
 At sentencing, the judge repeatedly expressed frustration about his inability to determine what conduct served as the basis for the jury's conviction and also about the government's effort, when arguing about each possible basis for enhancement, to assume that the conviction was based on whatever factual basis was most convenient to the government at the moment. At one point the judge said: "[Y]ou load everything up into a count, then you say use all the birds for dollar purposes, use just some of the birds for quarantine purposes, and we'll guess at how the jury found the other contrary to law, if they did." A moment later, he said: "Now there was no attack to the face of the indictment, though there might have been, but now you can't take a little piece of it for one issue and other piece of it for another issue and say: This is clearly what the jury must have found here. Somewhere along the line, you have to fish and cut bait when we get down to the sentencing aspect."
 
 
 [3]
 Before making its final determination, the district court would have to consider how a particular theory affects Crandall's aggregate sentence. If, for instance, the third theory is employed--the one bird theory--then the district judge would have to impose a two-level increase under U.S.S.G. § 2Q2.1(b)(2)(A) for failure to quarantine
 
 
 [4]
 Because it is not clear whether the district court grouped or will group, we do not consider the government's argument regarding a one-point multiple count enhancement
 
 
 [5]
 In United States v. Stubbs, 11 F.3d 632 (6th Cir.1993), the defendants raised a similar argument to that offered here by Crandall. That case does not help clarify the proper interpretation of U.S.S.G. 2Q2.1(b)(1), however, because there was clearly sufficient evidence to show that the defendants had acted with a commercial purpose and because the district court did not seem to distinguish between the "for pecuniary gain" and the "commercial purpose" prongs of the guideline. Id. at 640
 
 
 [6]
 The application notes are consistent with either interpretation. The first application note, by defining the first prong of the guideline extremely broadly ("for receipt of, or in anticipation of receipt of, anything of value, whether monetary or in goods or services"), suggests that the second prong must have some special meaning if it is not to be redundant of the first prong. The second application note, however, provides a meaningful interpretation of the second prong that does not depend on reading that prong to eliminate a scienter requirement. That application note reads: "The acquisition of fish, wildlife, or plants for display to the public, whether for a fee or donation and whether by an individual or an organization, including a governmental entity, a private non-profit organization, or a private for-profit organization, shall be considered to involve a 'commercial purpose.' " U.S.S.G. § 2Q2.1 Application Notes 1 & 3