**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARIA G. FLORES,
*Plaintiff-Appellant*,

v.

COUNTY OF LOS ANGELES and
LEE BACA,
*Defendants-Appellees*.

No. 12-56623

D.C. No.
2:12-cv-03021-R-SH

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Submitted March 7, 2014*
Pasadena, California

Filed July 14, 2014

Before: Jay S. Bybee, Carlos T. Bea,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bea

---

 * The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

---

### Civil Rights

The panel affirmed the district court's dismissal of an action brought pursuant to 42 U.S.C. § 1983 against Los Angeles County and Sheriff Lee Baca by a plaintiff who alleged that she was sexually assaulted by an unidentified deputy sheriff at a vehicle inspection cite.

The panel held that plaintiff's allegations did not establish that the County or Baca were deliberately indifferent to the risk of sexual assault by deputies on members of the public, nor that the assault on plaintiff was a known or obvious consequence of the alleged lack of training of deputies. Further, the panel held that in view of the penal code of California, which already prohibited such assault, and which law the deputies were sworn to uphold, and in the absence of any pattern of sexual assaults by deputies, plaintiff has also failed to allege facts sufficient to state a claim, plausible on its face, that the alleged failure to train officers not to commit sexual assault constituted deliberate indifference.

---

### COUNSEL

Luis A. Carillo, Law Offices of Luis A. Carillo, South Pasadena, California, for Plaintiff-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Thomas C. Hurrell and Melinda Cantrall, Hurrell Cantrall LLP, Los Angeles, California, for Defendants-Appellees.

## OPINION

BEA, Circuit Judge:

Plaintiff Maria Flores alleges that after she received a traffic ticket, she drove to a Los Angeles County vehicle inspection site to clear the ticket. There, she alleges, she was sexually assaulted by a deputy sheriff, who is to date unidentified. She now sues the County and its sheriff Lee Baca, claiming the assault was a proximate result of their failure properly to train deputy sheriffs "to ensure that Sheriff's [d]eputies do not sexually assault women that [d]eputies come in contact with." This failure to train is alleged to be a violation of plaintiff's constitutional rights, actionable under 42 U.S.C. § 1983. The district court dismissed Flores's claims for failure to state a claim for relief, and she appeals.

Flores's allegations do not establish that the County or Baca were deliberately indifferent to the risk of sexual assault by deputies on members of the public, nor that the assault on Flores was a known or obvious consequence of the alleged lack of training of deputies. Further, in view of the penal code of California,[1] which already prohibited such assault,

---

[1] California Penal Code § 243.4(e)(1) provides that any "person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery."

and which law the deputies were sworn to uphold, and in the absence of any pattern of sexual assaults by deputies, Flores has also failed to allege facts sufficient to state a claim, plausible on its face, that the alleged failure to train officers not to commit sexual assault constituted deliberate indifference.  For these reasons, we affirm.

## Factual and Procedural History[2]

On January 20, 2011, plaintiff Maria Flores went to the Vehicle Inspection Area at Metropolitan Court House in Los Angeles in connection with a traffic ticket.  An unknown deputy, whom Flores names Deputy Doe 1, was tasked with "signing off" on her ticket.  According to Flores's complaint, Deputy Doe 1 touched and fondled Flores's body without her consent.[3]  *Id*.

Flores timely brought suit in federal district court under 42 U.S.C. § 1983 against the County of Los Angeles (the "County") and Sheriff Lee Baca.[4]  Flores also brought state

---

[2] The facts we relate are drawn from the allegations of Flores's complaint.  Because Flores's complaint was dismissed under Federal Rule of Civil Procedure 12(b)(6), we take her factual allegations as true for the purposes of our review.  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1063 n.1 (9th Cir. 2013).

[3] There are no allegations that the nature of the law enforcement work performed at vehicle inspection areas requires deputies to touch people with whom they interact.

[4] Flores alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments, but briefs on appeal only her Fourth Amendment claim. However, Flores's alleged Fourth Amendment violation must be premised on the Fourteenth Amendment's incorporation of the Fourth Amendment against the states.  Therefore, for the purpose of our analysis, and based

law negligence claims against the County, Baca, and the fictitiously named Deputies Doe 1–10, assault and battery and intentional infliction of emotional distress claims against Deputy Doe 1, and a respondeat superior claim against the County. Deputy Doe 1 has not been served with process and is not a party to the action. The district court dismissed with prejudice Flores's state-law based negligence claims against the County and Baca, and her respondeat superior claim against the County. Flores does not appeal the dismissal of these state-law based claims.

In support of her § 1983 claims,[5] Flores's First Amended Complaint ("FAC") alleged that defendants "failed to implement proper training to protect women to ensure that Sheriff's [d]eputies do not sexually assault women that . . . [they] come into contact with at the Vehicle Inspection Area." The FAC also alleged that the defendants were on notice, following a different deputy sheriff's 2006 conviction for three sexual assaults which took place in 2004 and 2005,[6] "that since 2004 the training of Sheriff's [d]eputies had deteriorated, was defective, and needed improvement[,] and that failure to implement proper training for Sheriff's [d]eputies was reckless and dangerous . . . especially for women who would go to the Vehicle Inspection Area." The FAC alleged that the "failure to properly train Sheriff's

---

on her allegations, we will assume that Flores attempted to allege a deprivation of her rights under the Fourth and Fourteenth Amendments.

[5] Flores brought the § 1983 claim at issue against the County under *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978).

[6] Flores does not allege that the 2004 and 2005 assaults took place at the Vehicle Inspection Area where she was allegedly assaulted.

[d]eputies reflects a 'deliberate' or 'conscious' choice by the [County] and [Baca], and said failure to train can be properly characterized as an actionable [County] 'policy.'"[7]    To support the argument that the failure to include sexual assault training amounts to a deliberate or conscious choice, Flores proposed additions to the Sheriff's Department Manual that would instruct deputies that they "shall not sexually harass or sexually attack women with whom they come into contact."

Defendants moved the court to dismiss the FAC for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).  On that motion, the court found that Flores had failed to allege facts to show the existence of a policy, practice, or custom sufficient to state a claim against the County under *Monell*[8] and that Flores "fails to allege facts

---

[7] The FAC also incorporated allegations from the complaint that the County and Baca "intentionally and deliberately . . . ignore the background and evaluation of prospective deputies[;] ignor[e] the proper supervision of [d]eputies; ignor[e] recurrent complaints about sexually assaultive conduct . . . ; fail[] to remediate sexually assaultive conduct[;] and fail[] to discipline, reprimand, re-train or discharge [d]eputies or employees of the Los Angeles County Sheriff's Department for sexually assaultive conduct committed while employed" by the County.  These claims were not briefed on appeal, and are considered abandoned. *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

[8] Under *City of Canton v. Harris*, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom under § 1983."  489 U.S. 378, 389 (1989).  Where deliberate indifference is proved, "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id*. at 390.  A plaintiff alleging *Monell* liability for failure to train must "evince[] the deliberate indifference that [*City of Canton*] requires for a free-standing failure-to-train claim to succeed," and

showing that there was a sufficient causal connection between the wrongful conduct and the constitutional violation" to support her § 1983 claim against Baca in his individual capacity. The court dismissed the *Monell* and § 1983 claims against the County and Baca without leave to amend.[9] Flores timely appealed. On appeal, Flores argues that the district court erred because Flores alleged facts sufficient to state a claim for relief, plausible on its face, as to the County's and Baca's failure to train sheriff's deputies.

## Standard of Review

This court reviews de novo a district court's dismissal of an action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012).

---

having done so suffices to make out a free-standing claim for failure to train against a municipality. *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008).

[9] The order dismissing the counts against Baca and the County of Los Angeles made no mention of the state claims against Deputy Does 1 through 10. The district court has since entered a minute order terminating the case and stating that the case should have been closed August 20, 2012. When an "action is dismissed as to all of the defendants who have been served and only unserved defendants remain, the district court's order may be considered final under section 1291 for the purpose of perfecting the appeal. In such circumstances there is no reason to assume that there will be any further adjudication of the action." *Patchick v. Kensington Pub. Corp.*, 743 F.2d 675, 677 (9th Cir. 1984) (internal citations omitted).

**Analysis**

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute . . . custom, or usage of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction of [the United States] to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."     Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees. *Monell*, 436 U.S. at 694. Rather, as to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. at 388.[10] This means that Flores must "must

---

[10] In *City of Canton*, plaintiff Harris was arrested and detained at a police station. 489 U.S. at 381. During her transport to the station and at the station, Harris repeatedly slumped over, and she responded incoherently to the question whether she needed medical attention. *Id*. After her release, Harris's family took her to a hospital where it was determined she was suffering from severe emotional ailments and she was hospitalized for a week. *Id*. Harris brought suit under 42 U.S.C. § 1983, alleging the city violated her due process rights by failing to provide medical attention. *Id*. at 382. A jury found in favor of Harris, and the municipal defendant appealed. *Id*. The Sixth Circuit held that a municipality could be liable for failure to train, but reversed because the jury instructions might have led the jury to believe it could find for Harris on a respondeat superior theory rather than a failure to train theory. *Id*. at 382–83. The Supreme Court reversed and remanded, holding that failure to train police officers is a basis for § 1983 liability where that failure amounts to deliberate indifference to the rights of persons with whom the police force comes into contact. *Id*. at 388. The Court "reject[ed] [the] contention that only unconstitutional policies are actionable under the statute." *Id*. at 387. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." *Price*, 513 F.3d at 973. As to an official in his individual capacity, the same standard applies—Flores must show that Baca was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights. *Connick v. Thompson*, 131 S. Ct. 1350, 1358 (2011).

Under this standard, Flores must allege facts to show that the County and Baca "disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Id*. at 1360 (internal quotation marks omitted).

To this end, Flores argues that following the earlier arrest and conviction of a different Los Angeles deputy sheriff for sexual assaults, who Flores does not allege worked at the same installation, the County and Baca were on notice that the training of deputies was "inadequate," and that "proper training and procedures were not in place . . . to protect women [and] ensure that Sheriff's [d]eputies do not sexually assault women that Sheriff's deputies come in contact with on a daily basis."[11] However, Flores does not allege a pattern of

---

action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal citations omitted).

[11] Flores requests this court to take judicial notice of two news stories regarding the 2013 arrest for rape of yet another different Los Angeles deputy sheriff. Even assuming that the content of these stories were alleged in the complaint, further allegations of, or convictions for, sexual assault by sheriff's deputies which occurred after Flores's claimed injury would not change our analysis. The 2013 incidents occurred after Flores's

sexual assaults perpetrated by Los Angeles sheriff's deputies before her alleged assault in 2011.[12]  The sexual assaults in 2004 resulted in convictions against the sole offender.

A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," though there exists a "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Id*. at 1360, 1361 (internal citations and quotation marks omitted).  The isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on "notice that a course of training is deficient in a particular respect," nor that the absence of such a course "will cause violations of constitutional rights." *Id*.  Neither Baca nor the County was faced with a pattern of similar constitutional violations by untrained employees. *Id*. at 1360.

Nor does Flores's failure to train claim fall within the "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Id*. at 1361 (internal citations omitted).  In *City of Canton*, the "Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on

---

alleged assault in 2011, and cannot impute to the defendants a knowledge of risk as of 2011.  We deny the request to take such judicial notice.

[12] Flores's conclusory allegations below as to deliberate and intentional failure to evaluate applicants, and failure to punish deputy perpetrators of sexual assaults, have been abandoned on appeal. *See supra*, n. 7.

the use of deadly force." *Id*. at 1361 (internal citations and quotation marks omitted). In its hypothetical, the Court "sought not to to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id*. As the Court observed, this hypothetical recognizes that "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints of the use of deadly force." *Id*. There is, however, every reason to assume that police academy applicants are familiar with the criminal prohibition on sexual assault, as everyone is presumed to know the law. *United States v. Budd*, 144 U.S. 154, 163 (1892). There is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County or Baca were deliberately indifferent.

Finally, Flores's claim for failure to train fails because it is not plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Flores's sole factual allegation regarding the alleged failure to train consists in the absence of language in the Sheriff's Department Manual that would instruct deputies not to sexually harass or sexually attack women with whom they come into contact. "Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1993); *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997). Given that the penal code prohibits sexual battery, it is not plausible that inclusion in the Manual of the language that Flores proposes

would have prevented the assault on Flores.**[13]** If the threat of prison time does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to commit sexual assault will provide such deterrence, and therefore failure to include such instruction does not constitute deliberate indifference absent a longstanding pattern of such criminal behavior. We agree with our sister circuits that "[i]n light of the regular law enforcement duties of a police officer" there is not "a patently obvious need for the city [] specifically [to] train officers not to rape young women." *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior").

Accordingly, we hold that Flores has failed to allege sufficiently that the failure to train sheriff's deputies not to commit sexual assault constitutes deliberate indifference to

---

**[13]** As the Tenth Circuit has explained regarding the training of corrections officers, it does not appear that "a plainly obvious consequence of a deficient training program would be the sexual assault of inmates." *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). In *Barney*, plaintiffs were two women who, on separate occasions, were serving 48-hour sentences for minor offenses when they were sexually assaulted by a jailer. *Id*. at 1303. Plaintiffs brought suit against the jailer, the county, the sheriff, and the county commissioner under 42 U.S.C. § 1983, alleging violations of their First, Eighth, Ninth, and Fourteenth Amendment rights. *Id*. The district court granted the county's, sheriff's, and county commissioners' motion for summary judgment, and the Eighth Circuit affirmed, holding that under *City of Canton*, plaintiffs had not alleged the existence of a pattern of tortious conduct sufficient to show deliberate indifference nor that sexual assault was a highly predictable or plainly obvious consequence of the municipality's action or inaction. *Id*. at 1307–08.

the risk of such assault by a deputy.  Given the absence of any pattern of sexual assaults and the clear criminality of the conduct, we also hold that instructions in an employment manual not to sexually harass or sexually assault women cannot plausibly be considered an effective means to prevent sexual assault, when the employees are peace officers sworn to uphold the law which prohibits such assaults.

## Conclusion

Flores has not alleged facts sufficient to state a claim against the County or Baca, and the district court properly dismissed the action for failure to state a claim.  The judgment of the district court is **AFFIRMED**.